## UNITED STATES FIDELITY & GUARAN-TY CO. v. McCOLLUM.

### No. 2990.

Court of Civil Appeals of Texas. El Paso.

April 12, 1934.

Rehearing Denied May 3, 1934.

Collins, Jackson & Snodgrass, of San Angelo, for appellant.

B. F. Howell and Rankin and Kerr & Gayer, all of San Angelo, for appellee.

HIGGINS, Justice.

This is a suit by McCollum against appellant to set aside a compromise agreement settling a claim for compensation under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.). The validity of the agreement was attacked upon the ground of fraud and the further ground that such agreement had not been approved by the Industrial Accident Board.

The appellee's claim for compensation was presented to the board which, on May 31, 1932, made an award allowing compensation at the rate of $20 per week for an indeterminate period not exceeding 401 weeks.

The agreement was executed May 28, 1932. The sum of $1,200 was agreed to be paid in settlement of the claim. On the preceding night Dr. Page, the head of appellant's medical department in Texas, and Mr. Trimble, a representative of appellant, called upon appellee and submitted the offer to settle. The allegations of fraud are predicated upon certain representations alleged to have been made to plaintiff by Dr. Page in the interview mentioned.

The jury found: First, that Dr. Page made representations to plaintiff to the effect that he (the plaintiff) could not have been injured in the manner claimed by him; second, that Dr. Page made representations to plaintiff to the effect that the defendant was not liable to him, the plaintiff, in any sum.

With respect to each of these issues, additional questions were submitted inquiring whether the representations were false, were made with intent to deceive, were believed to be true by plaintiff, were relied upon by plaintiff when he executed the agreement, and were a material inducement to plaintiff in inducing him to execute the agreement, all of which were answered in plaintiff's favor. Upon the findings, judgment was rendered setting aside the compromise agreement.

## Opinion.

Exception was taken to the failure of the court to define the phrase "material inducement" as used in the issues inquiring whether the representations of Dr. Page were material inducements to plaintiff inducing him to execute the agreement.

In an action to rescind based upon fraudulent representations, the phrase in question has a legal meaning which the average laymen perhaps and probably would not ascribe to it. Ford v. Union, etc., 229 Ill. App. 264; Beggs v. Shelton, 173 Mo. App. 127, 155 S. W. 885.

The requested definition should have been given. Texas, etc., v. McCarty (Tex. Civ. App.) 60 S.W.(2d) 1069; Missouri, K. & T. Ry. Co. v. Long (Tex. Com. App.) 299 S. W. 854; Southern Surety Co. v. Solomon (Tex. Civ. App.) 4 S.W.(2d) 599.

An approved definition of the phrase is quoted in H. W. Broaddus Co. v. Binkley (Tex. Civ. App.) 54 S.W.(2d) 586.

Appellant questions the sufficiency of the evidence to authorize the submission of the issues relating to the representations of Dr. Page that plaintiff could not have been injured in the manner claimed by him.

Upon direct examination, plaintiff testified that in signing the agreement he believed and

relied upon Dr. Page's statements, but upon cross-examination he testified:

"Q. Did you discuss with Mrs. McCollum that night as to whether or not you could have hurt your back by lifting? A. I don't remember about that.

"Q. Did you discuss with her whether you could hurt your back by lifting? A. Yes, we said something about it.

"Q. What did she say, that you could or could not? A. She was like I was; she said Dr. Page represented himself as being sure about it and that he ought to know what he was talking about.

"Q. She said she was believing what Dr. Page said was true? A. She told me after he left that she didn't believe he was telling the truth about it.

"Q. Did she discuss it before he left? A. Yes, sir.

"Q. What did she say before he left; did she believe him when he told you you could not hurt your back by lifting? A. I didn't talk to her about that.

"Q. After he left she did tell you she didn't believe he was telling you the truth? A. Yes, sir.

"Q. That was the same night? A. Yes, sir.

"Q. Did you agree with her then or did you still believe Dr. Page? A. I didn't think he was telling me the truth then.

"Q. Is that correct? A. Yes, sir.

"Q. For about what period of time that night did you believe a man could not hurt his back by lifting? A. I believed it until after he left and then I got to studying about it and decided he was not telling the truth about it.

"Q. You decided a man could hurt his back from lifting? A. Yes, sir.

"Q. You decided that because you knew it was true? A. Yes, sir.

"Q. You had seen men do it and had hurt your own back? A. Not like that.

"Q. After he left you decided a man could hurt his back by lifting? A. Yes, sir.

"Q. The next morning you signed the agreement? A. No, not the next morning.

"Q. What time did you sign the agreement? A. In the afternoon of the next day.

"Q. When you signed the agreement the next day you believed a man could hurt his back by lifting? A. Yes, and I still believe it.

"Q. And you have believed it all your life? A. Yes, sir.

"Q. The fact that Dr. Page told you didn't make you believe it, did it? A. I believed him for 30 or 40 minutes that night.

"Q. What is your explanation as to why you signed the agreement on the following day? A. Because I had agreed on the settlement the night before.

"Q. You thought the agreement had been made? A. Yes, sir.

"Q. You thought it was an agreement between you and them to settle for $1200.00? A. Yes, and as long as I had made this agreement with Dr. Page I signed it and settled it.

"Q. You thought the agreement had actually been made? A. Yes, sir."

If at the time he executed the agreement plaintiff did not believe the representation of Dr. Page that he could not have been injured in the manner claimed, then he was not deceived, and it follows he cannot rescind because of such misrepresentations. Thrower v. Brownlee (Tex. Com. App.) 12 S. W.(2d) 184; Dossett v. Franklin L. I. Co. (Tex. Com. App.) 276 S. W. 1097.

We are not unmindful of the rule that inconsistencies and contradictions in the testimony of a party to a suit ordinarily present an issue for the determination of the jury and do not authorize the court to adopt that view of the testimony most unfavorable to the witness and withdraw the issue from the jury. Melburn v. Webb (Tex. Civ. App.) 277 S. W. 800; Williams & Chastain v. Laird (Tex. Civ. App.) 32 S.W.(2d) 502; Funk v. Miller (Tex. Civ. App.) 142 S. W. 24.

But such rule can have no just application to the positive testimony of appellee given upon cross-examination and quoted above. In our opinion, such testimony deprived of all probative force plaintiff's previous statement that he believed and relied upon Dr. Page's statement in executing the agreement. In the state of plaintiff's own testimony, the issue of fraud based upon the statement of Dr. Page that plaintiff could not have been injured in the manner claimed should not have been submitted.

With respect to the second ground of fraud submitted, it is urged its submission is not supported by the pleadings or evidence.

The pleadings do not support the submission of such issue. This being true, it is unnecessary to consider the sufficiency of the evidence upon the same.

The fourth proposition presented by appellant is without merit and calls for no discussion.

■ The judgment will not be here rendered in appellant's favor upon any present insufficiency in the evidence upon the question of fraud.

The record discloses that plaintiff declined to accept the check tendered by appellant in settlement. The evidence upon the issue of final approval by the Industrial Accident Board of the settlement evidently has not been fully developed. The record suggests that the board's approval was merely tentative; that its final and formal approval has not been given. In other words, the record indicates, with reference to the validity of the settlement, that the case is governed by the rule announced in the recent case of Petroleum Casualty Company v. Lewis (Tex. Civ. App.) 63 S.W.(2d) 1066, in which a writ of error was refused.

So, regardless of any present deficiency in the evidence upon the issue of fraud, the judgment should be reversed and the cause remanded for retrial.

It is so ordered.